UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
PEDIFORD-AZIZ                                            **MEMORANDUM AND ORDER**
                    Plaintiff,                           15-CV-1371 (ILG) (MDG)
        - against -

CITY OF NEW YORK, ET AL.,

                    Defendants.
--------------------------------------------------------x

GLASSER, Senior United States District Judge:

Nyahali Pediford-Aziz ("Plaintiff"), alleging unlawful retaliation, brings suit under the Americans with Disabilities Act, 42 U.S.C. § 12203 (ADA), and the New York State Human Rights Law, N.Y. Exec. Law § 296 (NYSHRL), against five defendants: the City of New York, the NYC Department of Education (DOE), the Office of Safety and Youth Development, Andy Mina, and Mark Rampersant ("Defendants").[1] Before the Court is Defendants' motion to dismiss. For the reasons given below, the motion is GRANTED in part and DENIED in part.

# 1  BACKGROUND

Plaintiff was employed as a school security guard by the DOE's Office of Safety and Youth Development. *See* Am. Compl., Dkt. 8, ¶¶ 6, 9. In August 2011 she brought an ADA and Title VII suit against the DOE, which she settled in August 2013. *Id.*, ¶¶ 17–19. On the day of the settlement, Plaintiff was arrested for an unrelated incident. *Id.*, ¶ 20. As a result, Plaintiff's

---

[1] Plaintiff concedes that the City of New York cannot be held liable for the acts of the DOE or the Office of Safety and Youth Development (*see Fierro v. City of New York*, 2013 WL 4535465, at *2 (S.D.N.Y. Apr. 22, 2013)), and that the ADA does not provide for individual liability (*see Spiegel v. Schulmann*, 604 F.3d 72, 79-80 (2d Cir. 2010)). *See* Pl. Mem. of Law, Dkt. 13, at 5–6. Accordingly, all claims against the City, and the ADA claims against Mina and Rampersant, are dismissed.

1

designation as a special patrolman—a condition of her employment conferred by the NYPD—was suspended,[2] and Plaintiff was required to take unpaid leave. *Id.*, ¶¶ 21, 30.

In January 2014, charges stemming from Plaintiff's arrest were dismissed. *Id.*, ¶¶ 20, 22. Accordingly, in April 2014, the NYPD restored her designation as a special patrolman. *Id.*, ¶ 25. The DOE did not permit her to return to work, however, until four months later, in August 2014. *Id.*, ¶ 22.

Plaintiff alleges that Defendants prolonged her suspension in retaliation for her 2011 lawsuit, citing "excuses" that she was given for the four-month delay. *Id.*, ¶ 23. First, two supervisors named in her prior lawsuit, Andy Mina and Mark Rampersant, blamed the delay on a "glitch in the system." *Id.*, ¶ 25. Later, Plaintiff was told "to resubmit her GED certificate" and "update her CPR credentials," even though those credentials had not expired. *Id.*, ¶ 26. Finally, Rampersant said "that Plaintiff was out of work because he was unable to place Plaintiff on night-caps." *Id.*, ¶ 28. When Plaintiff explained that "she was never associated with night-caps" (*id.*), Rampersant switched gears, falsely claiming that she "was not cleared by the Office of Personnel Investigation," *id.*, ¶ 29. Plaintiff alleges that other employees that were arrested and cleared were reinstated without delay. *Id.*, ¶ 36.

One month after Plaintiff was restored by the NYPD, in May 2014, she brought a charge before the Equal Employment Opportunity Commission (EEOC). *See* Murrell 2d. Decl., Ex. A, Dkt. 14-1. The EEOC dismissed Plaintiff's charge, issuing a right-to-sue-letter dated December 18, 2014. *See id.* On March 17, 2015, Plaintiff commenced this lawsuit. *See* Compl., Dkt. 1.

A few months later, on June 26, 2015, Plaintiff was fired. She then amended the complaint, adding allegations of retaliatory discharge under the ADA. *See* Am. Compl., ¶¶ 37–

---

[2] Under local regulations, when a special patrolman is arrested, her designation as such must immediately be "canceled, suspended, or revoked." 38 Rules of New York City § 13-02.

41. Specifically, Plaintiff alleges that she applied in December 2014 for medical leave under the Family Medical Leave Act (FMLA). *Id.*, ¶¶ 38–39. She alleges, on information and belief, that her request for leave was approved through August 1, 2015 (*id.*, ¶¶ 37, 39), and that while she was on approved leave, she was terminated. *Id.*, ¶ 41.

Defendants maintain that Plaintiff abandoned her position. *Id.*, ¶ 40. They contend that Plaintiff's medical leave was approved through February 2015, not August, citing the DOE letter approving leave. *See* Murrell Decl., Ex. D, Dkt. 10-3. Plaintiff does not dispute that she did not return to work after February. *See* Am. Compl., ¶ 37. Rather, she claims that she requested an extension, citing a letter dated July 9, 2015—two weeks *after* her termination—in which the DOE *denied* her request for an extension because she was "no longer an active employee."[3] Pl.'s Ex. A, Dkt. 13-1; *see* Pl. Mem. of Law, Dkt. 13, at 11. Defendants have filed a copy of her termination letter, which states that after the approved leave ended, Plaintiff failed to report to work, request additional leave, or respond to inquiries. *See* Murrell Decl., Ex. C, Dkt. 10-4. The letter states that after months of unauthorized absence, Plaintiff missed two disciplinary hearings. *Id.* Thus, the DOE, concluding that Plaintiff abandoned her position, terminated her. *Id.*

## 2 <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

---

[3] Plaintiff has submitted a photograph of part of the first page of an undated, barely legible document that she purports is a request for an extension. *See* Pl.'s Ex. B, Dkt. 13-2. Neither the letter, the Amended Complaint, nor any other document states the date on which Plaintiff requested the extension.

U.S. at 678. While detailed factual allegations are not necessary, the pleading must include more than legal conclusions, "a formulaic recitation of the elements of a cause of action," and "naked assertions." *Id.* (quotations and citations omitted). The court must credit all non-conclusory allegations and draw all reasonable inferences in the plaintiff's favor. *Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011).

## 3 DISCUSSION

### 3.1 Exhaustion of Administrative Remedies

Defendants argue that Plaintiff's claims are barred for failure to exhaust administrative remedies. Under the ADA, before filing a claim in federal court, a plaintiff must exhaust administrative remedies by filing a charge with the EEOC. *See* 42 U.S.C. §§ 2000e-5(e)–(f), 12117(a); *Harris v. City of New York*, 186 F.3d 243, 247–48 (2d Cir. 1999). The plaintiff may assert in federal court "only those claims that either were included in or are 'reasonably related to' the allegations contained in her EEOC charge." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001). "Reasonably related" claims include: (1) claims which "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge"; (2) claims "alleging retaliation by an employer against an employee for filing an EEOC charge"; and (3) claims alleging "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts v. City of N.Y. Dep't of Hous. Pres. and Dev.*, 990 F.2d 1397, 1402–1403 (2d Cir. 1993) (quotations omitted).

Plaintiff exhausted the claim that Defendants prolonged her suspension in retaliation for her prior lawsuit. While her EEOC charge was loosely pleaded, the EEOC accepted it, issuing a right-to-sue letter. *See* Murrell 2d. Decl., Ex. A, Dkt. 14-1; *see generally Simpson v. City of New York Dep't of Hous. Pres. & Dev.*, 2009 WL 996388, at *5 (S.D.N.Y. Apr. 13, 2009) (quotations and ellipses omitted) ("The required content for a charge is minimal and a charge is sufficient

4

when the EEOC receives a writing from the person making the charge that names the employer and generally describes the allegedly discriminatory [or retaliatory] acts.").

Defendant's counterarguments are meritless. First, Defendant notes that although the Amended Complaint asserts a retaliation claim under the *ADA*, the EEOC's Notice of Charge characterizes Plaintiff's retaliation claim as arising under *Title VII*. The 2011 lawsuit for which Defendants are alleged to have retaliated, however, was brought under Title VII *and* the ADA.[4] Accordingly, in the present lawsuit, Plaintiff could have asserted retaliation claims under the ADA, Title VII, or both; she elected to proceed under the ADA. It is of no consequence that the EEOC gratuitously cited Title VII in its Notice of Charge, for "it is the substance of the charge and not its label that controls." *Alonzo v. Chase Manhattan Bank*, 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998); *see Goetz v. Samuel Aaron, Inc.*, 1998 WL 372427, at *5 (E.D.N.Y. May 18, 1998) (although EEOC charge and notice cited the ADA and Title VII, Plaintiff could assert a claim under the Age Discrimination in Employment Act because in substance the charge alleged age discrimination); *cf. Tsai v. Rockefeller Univ.*, 137 F. Supp. 2d 276, 284 (S.D.N.Y. 2001) ("Nor does the fact that plaintiff omitted to check the appropriate boxes on her EEOC charge necessitate dismissal of her [] claim."). By alleging in her EEOC charge that despite being "cleared by [the NYPD]," she was "still out of work due to retaliation" for her prior federal lawsuit (Murrell 2d. Decl., Ex. A, Dkt. 14-1), Plaintiff exhausted her ADA retaliation claim.

Second, Defendant argues that because Plaintiff did not file a second EEOC charge after her termination, her retaliatory discharge claim is unexhausted. But "[i]t is well-settled that allegations of retaliation made after an administrative complaint has been filed are 'reasonably related' to the administrative complaint." *Rinsler v. Sony Pictures Entm't, Inc.*, 2003 WL

---

[4] *Pediford-Aziz v. The New York City Department of Education*, No. 11-CV-3917 (MKB) (LB).

22015434, at *8 (S.D.N.Y. Aug. 25, 2003) (citing *Butts v. City of N.Y. Dep't of Hous. Pres. and Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993)) (holding that a claim of retaliation based on termination which occurred after the filing of EEOC charge was reasonably related to the discrimination claims asserted in the EEOC charge). As here, courts "have allowed retaliation claims not alleged in the administrative charge to proceed in situations where the retaliation occurred after the filing of the administrative charge or lawsuit." *Zawacki v. Realogy Corp.*, 628 F. Supp. 2d 274, 284 (D. Conn. 2009). Under these circumstances, requiring Plaintiff to file a second EEOC charge would senselessly waste administrative and judicial resources. Therefore, there is no procedural bar to Plaintiff's retaliatory discharge claim.

**3.2** **Merits of Plaintiff's Retaliation Claims**

Turning to the substance of the motion to dismiss for failure to state a claim, the Court finds that although Plaintiff has not plausibly alleged that her termination was motivated by retaliation, she has stated a retaliation claim based on the prolonged suspension.

The ADA forbids an employer from discriminating "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "In order to establish a prima facie case of retaliation, [an employee] must show that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). To survive a motion to dismiss, an employee "need not specifically plead every element;" she must allege just enough factual matter to "render [the] retaliation claims plausible." *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 187 (E.D.N.Y. 2012) (citing *Williams v. N.Y. City*

*Hous. Auth.*, 458 F.3d 67, 71–72 (2d Cir. 2006)); *see Pahuja v. Am. Univ. of Antigua*, 2012 WL 6592116, at *9 (S.D.N.Y. Dec. 18, 2012). The same standards govern Plaintiff's state law claims. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006); *Magnotti v. Crossroads Healthcare Mgmt., LLC*, 2015 WL 5173528, at *8 (E.D.N.Y. Sept. 3, 2015).

Defendants argue that Plaintiff has failed to plead a causal connection between Plaintiff's protected activities and the adverse employment actions—*i.e.*, the prolonged suspension and discharge. To establish a causal link, a plaintiff must prove "that retaliation was a 'but-for' cause of the adverse action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2526 (2013)). Causation may be proven with direct evidence of retaliatory animus, or with circumstantial evidence, including, for example, close temporal proximity between the protected activity and adverse action (*Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001)), proof that the complaining employee was "treated differently than other employees who did not engage in a protected activity" (*Conklin v. Cty. of Suffolk*, 859 F. Supp. 2d 415, 433 (E.D.N.Y. 2012); *Grant v. United Fed'n of Teachers*, 2014 WL 978444, at *13 (E.D.N.Y. Mar. 12, 2014)), or proof of "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action" (*Collazo v. Cty. of Suffolk*, 2016 WL 660856, at *17 (E.D.N.Y. Feb. 17, 2016) (quoting *Zann*, 737 F.3d at 846); *see also Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001)).

Plaintiff has sufficiently alleged that after she was cleared by the NYPD, Defendants delayed her return in retaliation for her prior lawsuit. First, Defendants allegedly proffered a series of shifting and arguably pretextual reasons for the delay. It is plausible, for example, that the four-month delay was not caused by a mere system "glitch." Indeed, Rampersant gave a different, more troubling, reason for the delay: a plan to transfer Plaintiff to nightshifts. After

Plaintiff objected—an involuntary transfer to nightshifts, under certain circumstances, may qualify as a materially adverse action—Rampersant backtracked, blaming the delay on the Office of Personnel Investigation. But that office had already cleared her return. From these "implausibilities, inconsistencies, [and] contradictions in" the proffered reasons for the delay, one "could conclude that the explanations were a pretext" for retaliation. *Zann*, 737 F.3d at 846.

Second, the temporal proximity between the protected activity and delayed return is close enough to infer retaliation. Plaintiff was engaged in protected activity until she settled her prior lawsuit in August 2013. *See Grant*, 2014 WL 978444, at *13 (citing *Infantolino v. Joint Indus. Bd. of Elec. Indus.*, 582 F. Supp. 2d 351, 359 (E.D.N.Y. 2008)) ("under the ADA, protected activity includes not only the filing but also the prosecution of a retaliation lawsuit"). The adverse action began eight months later, in April 2014, after Plaintiff was restored by the NYPD but prevented from returning to work. During the intervening months, however, Plaintiff was suspended, and thus Defendants had no opportunity to retaliate. Given these circumstances, and in light of the inconsistent reasons that were given for the delay, the eight-month gap may support an inference of retaliation. *See, e.g.*, *Cronin v. St. Lawrence*, 2009 WL 2391861, at *5 (S.D.N.Y. Aug. 5, 2009) (an eleven-month gap is acceptable if the defendant "had no earlier opportunity to retaliate") (collecting cases); *cf. Grant*, 2014 WL 978444, at *13 (together, a nine-month gap and evidence of differential treatment may raise a plausible inference of causation).

In contrast, any link between the protected activities and Plaintiff's termination is belied by her own submissions, which bolster Defendants' legitimate reason for the termination: Plaintiff's lengthy unauthorized absence. Above all, Plaintiff's allegation that her request for a leave of absence "was approved" is entitled to no credit because it is "based on [unspecified] information and belief." *Id.*, ¶ 39. "Though a plaintiff may plead facts alleged upon information and belief

8

where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible, such allegations must be accompanied by a statement of the facts upon which the belief is founded." *Navarra v. Marlborough Gallery, Inc.*, 820 F. Supp. 2d 477, 485 (S.D.N.Y. 2011) (quotations and citations omitted). Plaintiff offers no information to support her belief that her request was approved. Indeed, if it were approved, it is inconceivable that Plaintiff would lack personal knowledge of that fact. Thus, even without the extrinsic documents filed in connection with the motion to dismiss, Plaintiff's claim that Defendants falsely accused her of taking unauthorized leave as pretext for retaliation is implausible. The extrinsic documents, moreover, clearly refute Plaintiff's claim. As detailed above, they show that after her approved leave ended, Plaintiff failed to return, and that on some unspecified date, she requested an extension that was not approved.[5] Indeed, Plaintiff all but concedes in her opposition papers that her request was not approved, and thus, that her absence after February 2014 was unauthorized. *See* Pl. Mem. of Law, Dkt. 13, at 11. Her claim of retaliatory discharge is therefore implausible.

---

[5] The documents are properly considered. *Cf., e.g.*, *Betancourt v. City of New York*, 2007 WL 2948345, at *2 (S.D.N.Y. Oct. 9, 2007) (considering the plaintiff's termination letter in motion to dismiss); *Davis v. Columbia Univ.*, 2010 WL 2143665, at *2 (S.D.N.Y. May 26, 2010) (same); *see generally Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."). Indeed, were the Court to convert the motion to one for summary judgment, it would decide it on the present submissions, given that the extrinsic documents were in the both parties' possession, and the parties have had a full opportunity to respond. *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985) ("The essential inquiry is whether the [parties] should reasonably have recognized the possibility that the motion might be converted . . . or [were] taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings."); *see also, e.g.*, *Washington v. Securitas Sec. Servs. USA, Inc.*, 2014 WL 2882854, at *1 (W.D.N.Y. June 25, 2014) ("treat[ing] Defendants' motion to dismiss as a motion for summary judgment" but "find[ing] the motion can be resolved on the documents already submitted").

## CONCLUSION

Defendants' motion is GRANTED in part and DENIED in part. All claims against the City of New York, ADA claims against Mina and Rampersant, and Plaintiff's retaliatory discharge claim are dismissed. Plaintiff's federal and state retaliation claims survive to the extent they are based on the prolonged suspension.

SO ORDERED.

Dated: Brooklyn, New York
March 17, 2016

/s/
I. Leo Glasser
Senior United States District Judge